Our next case on calendar is InkMango v. Namecheap, 25-3358. Each side will have 10 minutes in this case. Good morning. May it please the Court. My name is Michael Marion. I am counsel for Appellant InkMango. I would like to reserve two minutes of my time for rebuttal. The appeal here is a narrow issue. The lower court correctly remanded the case back to state court after finding a lack of federal question jurisdiction, but denied InkMango's fees under 28 U.S.C. 1447C on a rationale that is legally erroneous and untethered to the removal that was actually filed. Under Martin, which everyone agrees is the standard that applies here, the standard is whether or not the removal had an objectively reasonable basis. But then, you need to evaluate whether there are unusual circumstances exist, and the court must then assess in a way that is faithful to the statute's compensatory and deterrent purposes. We contend the lower court made three errors that require reversal. First, the lower court improperly assessed a higher standard in evaluating whether removal was reasonable, requiring basically an objectively baseless standard instead of the objectively reasonable standard for Martin, and creating new safe harbors that are unsupported by Martin. The second is the lower court improperly required a finding of bad faith, rather than the broader category of just unusual circumstances that require deviation from the objective or reasonable standard. The third, the lower court made erroneous fact findings evaluating the bad faith, in particular, the timing surrounding the removal to get avoid the state court TRO. Taking these points one at a time, the first error, the lower court held the standard as baselessness, not reasonableness. The remand order, which is not subject to review, found two dispositive facts. To figure out if it's baseless or under whatever standard, whether there was enough of an idea of a federal question here, is that something we would review de novo? Yeah. So because the standard review is whether the court abuses discretion, but an abuse of discretion is applying the wrong legal standard. So this would be something you would review de novo since the legal standard was wrong. So that is right. So it seems like your claims did at least somewhat involve trademark issues and also issues of Indian trademark law, and also issues maybe of how an Indian court works or something. Why aren't those federal questions? So I think the best place to start from is to see things that are inside the federal question. And that's where you have to go to the test under Gun V. Minton. Here, the lower court did not even attempt applying Gun V. Minton to determine whether or not these things existed. So there was a theoretical determination that such questions could be federal questions, but the lower court made no such determination. And so they just cut to the chase and said, well, there are federal questions that could be embedded. Well, okay, but we just talked a minute ago about how this is de novo. So just answer your question. Absolutely. So when applying Gun V. Minton, there's four requirements that's necessarily raised, actually disputed, substantial, and it respects the federal-state balance. When you apply all four of those tests, the answer is no here. And I think the best thing we have to show that there is a lack of basis is the Placer-Dome case. Because in Placer-Dome, you had a case where the plaintiff was a foreign government, in the case of the Philippines, asserting rights on behalf of their citizens of the Philippines, seeking redress for something that happened in the Philippines. And this court found that there was not federal question jurisdiction in that case after removal. So here in a case where the state law claims are a U.S. plaintiff seeking redress under U.S. law for something that happened inside the U.S., we are so far removed from Placer-Dome that there isn't really a question about whether or not federal question jurisdiction exists. Did we have Placer-Dome? I'm trying to remember if that was in our briefs. Is that a case that we should be familiar with? I believe I cited it in the case. Placer-Dome, 582 F. 3rd, 1083. I know it was leased in the briefing in the lower court. I can double-check. I'm pretty sure that was one of those cases we could rely on. If I read your friend on the other side's facial expression, my guess is you did not. I will double-check, but I know that it was leased cited for the lower court. What was the reason in Placer-Dome that there wasn't federal question jurisdiction? In Placer-Dome, the Ninth Circuit held that the sort of bases for – I do not have that in front of me right now. And did we award attorney's fees in that case? That was not a question of whether or not – That goes to the question of removal and remand to state court. Nobody is disputing the remand here. That's not contested. And as far as we're concerned, that's a correct decision by the district court. The only question is sort of the degree of outrage in trying to remove in the first place. Yeah, I agree with you. So you go back and you go through the analysis. It's the well-pleaded complaint rule. That's what we started with. That has been federal law for almost – The Supreme Court said it was – We've got to separate the question as to whether your case has been properly remanded to state court. You win on that. The question is how – was there any plausible argument here for removal? When we say plausible, now we're back to baselessness. That's where I think we go astray here. Because if you're saying that there's any reason to remove, any at all, the only thing lower than that has to be baselessness. So when you're saying that is there any reason at all why there's removal, you've taken it away from what is objectively reasonable. You're looking at the middle of the bell curve there, not the extreme ends. So if you're asking about that, we're already back to where the lower court erred in trying to find that there was baselessness in the removal. The second issue is that the lower court required a finding of bad faith to establish unusual circumstances as an exception to the general rule of Martin. The lower court made a finding of fact, but – Again, if we're – some of these questions, it seems like they're de novo. So do you – it seems like – do you concede that bad faith could be a reason? And if so, I had thought it was an either or. It's like either there's plausibly a federal question or maybe there's some sort of bad faith. Either one could be – The way I read Martin is you take the – so the quote from Martin is, absent unusual circumstances, there should not be a warrant if it's objectively – if there's an objectively reasonable basis. So I read that as you start with making an objectively reasonable assessment, one way or the other. Then you see, despite that, you make a determination that you should award fees despite the fact that it was objectively reasonable, or you should not award fees despite the fact that it was objectively unreasonable. I think one – when preparing for this, one of the things I saw frequently is there were objectively unreasonable bases for removing cases, but those were done by pro se plaintiffs. And so there was a reason to deviate from that. Not that it's unusual to have pro se plaintiffs, but the need for deterrence and the need for all that was less needed for a pro se versus an experienced litigator who could probably come up with any number of reasons why something could be removed or should be able to evaluate the law better. So that would provide a basis, but that is not sufficient. That's not the only reason why it could be provided. So, you know, the question is whether or not – You think it's objectively unreasonable. The basis here was objectively unreasonable. To suggest that a case for rising out of legal proceedings in New Delhi, India, shouldn't be in Maricopa County Superior Court. But the claims at issue here were not rising out of the Indian case. The Indian case provided the anticipated justification for the defendant's action. But we were in a situation, we were filing for a TRO, and we needed to be clear with the court about why we were here and why they breached the contract. So all these are state law claims that are brought forward, and anticipated offenses are certainly something that we were going to need to address as part of an ex parte application. But the way you pled them, the complaint talks about, you know, breaching your obligations under the contract. I don't have the exact quote, but something like without a legal basis, without a legal justification. And once you're talking about – or without a court reason, once you have that kind of without clause, why aren't you embedding the Indian court at that point by the way it's pled? So the question then is – so you're asking me – so then it's a question of the U.S. court evaluating the Indian action, not the Indian court enforcing its order in the U.S. So that's flipping it on its head. And we're back to, again, Placer Dome again, where, again, even where there's a – in that situation, there still probably wouldn't be federal question jurisdiction then. So we're still so – based on the law that had been established at the time, we're still so far removed from jurisdiction that is objectionably unreasonable. Here, I found it. Paragraph 80, unilaterally deactivated domains without lawful court orders. If you're going to say without lawful court orders on the face of your complaint as part of your allegation, why isn't that creating the hook for that to be part of the claim, that now there's a federal question in your claim? Again, you go back to – Or why is there plausibly? I mean, I understand you're not really – there isn't really, but why isn't it plausible? Again, if it is something a hair above baselessness, then maybe we're having a discussion then. But then we're – again, we're back removed from going back to where Martin says that the starting point of whether or not you award fees is that there is – it's a neutral statute that you come for, and that's what the analysis was. They looked at both, you know, should there be a presumption of awarding fees, should it be only in frivolous or – what was the Solicitor General's position? It was frivolous, unreasonable, or without foundation. The Supreme Court rejected all those formulations and said, no, this is straight down the middle. So you need to look at something straight down the middle. And if you're at the, well, there is this iota of specter of something that could be a question, then we're outside a reasonable basis. You know, if I'm going to get my car washed today based upon the weather, is it a 10% chance, a 90% chance of rain? Those are things about – you're looking at probabilities, not a guarantee whether or not – We have you over your time, so we'll still give you two minutes for rebuttal, but let's hear from the other side. Your Honors, good morning, and may it please the Court, my name is Eugene Rome on behalf of Defendant Ethel E. Namecheap. At a particular structure I was going to argue today, but in light of – I am so sorry. But in light of the questions that you had posed, I wanted to hone in on those particular issues. You alluded to the fact that there was an allegation without lawful court order, and I think that's a significant one, because everything is predicated upon what had happened in New Delhi. But it goes substantially beyond that, and while we're not currently hassling with the ruling of the federal court remanding the matter, there are certainly jurisdictional hooks that frankly could be and should have been viewed substantially differently. I'll be specific here. Fourth claim in the complaint is for breach of contract. The breach of contract states that the agreement, the DNRA, and that's the agreement bind between what Plaintiff alleges, Inc., Mango, and Namecheap has certain requirements. So what Plaintiff says is that it's bound by DNRA, and it identifies the agreement, and this is paragraph 25, the notice of removal. We quote certain passages of the DNRA, and we state that Defendant Namecheap may terminate or suspend services at any time for cause which without limitation includes registration of prohibited domain names, abusive services, payment irregularities, or material allegations of illegal conduct, which is obviously trademark infringement. Subsequently, paragraph 26 of the notice of removal, we allude to the fact that the DNRA prohibits Plaintiff from using Namecheap services in a manner that infringes upon trademark rights of a third party. So that's squarely this issue. The reason I bring that up is the – So typically defenses can't be the basis for federal jurisdiction, right? So this is – I think they have a pretty good argument that this was a contract claim. They're basically just saying you promised to give us this domain and now you're not, and they've had various state law versions of that, and you're trying to say, well, we have this Indian action, or maybe you were violating trademark, but those are defenses. And as I understand it, you wouldn't only need to show that somehow they're embedded to get over this problem that they're a defense, but also that they're substantial. Then federal courts would really care a lot about them. And I do think they have a pretty good argument that you can't come close to that. So can you make their best argument for what the question is that's not just a defense and how it's important to the federal courts? Your Honor, we would argue that we are actually in compliance with the agreement. In other words, to construct whether or not we're in breach, we have to have breached a particular portion of the contract. If we are removing the domain based on the very requirement of the agreement, if we are preventing access that says you are not infringing, that's not a defense. That's part of a prima facie case. What we're saying is that this is our right. There's no breach, so it's not an affirmative defense in the sense of perhaps statute of limitations or some other affirmative defense that would validate our conduct. There's simply not an instance of breach by name cheap when it undertakes that action. So you think an element of one of the claims in the complaint as you see it is we are not violating trademark and we're not violating a foreign court order. That's like part of the elements of their burden, of their claim? I believe so. It's contract construction. What I'm saying is that they're saying you transfer the domain out. Well, in derogation of your contractual obligations to us. So we have to look at what the contract says. If the contract says here are the circumstances upon which we can prevent you from having access to the domain, and one of those is when it is infringing a third party right, which obviously brings up both the New Delhi litigation issue and just federal question issues, then there's no breach. If the contract says just in a different situation, on a particular date you can undertake this action and the defendant undertakes that action on that date, it's not an affirmative defense to say that it did so. It's merely a factor of contract construction. From our point of view, it's a prima facie issue as opposed to an affirmative defense truly to the conduct. So even if that's true, in Gunn there was a patent question that was part of the claim, but it wasn't substantial. What would make this embedded question about whether there's trademark infringement or some problem with the Indian court a substantial federal question? Your Honor, it's the largest question permeating this entire litigation. No, but substantial means that it matters to the courts. It's not substantial. It's substantial in the sense that it needs to be in federal court instead of needing to be in state court. I think the strongest point is that it requires construction of trademark rights. But that was true in Gunn about the patent. Your Honor, I don't think we can navigate that issue without construing trademark rights because it's a question of territoriality. There are all kinds of federal issues arising out of the trademark rights. They have to be navigated for any of these claims, and most specifically the contract claim to have been properly adjudicated. And it's not an affirmative defense. Everything stems, all the allegations stem from the plaintiff and appellant's claimed rights to the mark underlying the domain. And that affects every cause of action stated in the complaint and their adjudication. It's not merely a question of an affirmative defense. Rather, whether or not trademark rights both are properly utilized domestically, but also whether or not the domestic trademark rights impact the Indian right holders and the rulings of the New Delhi court, they permeate every facet of every claim in this complaint. More so, this is not my argument. This is a direct allegation that has been stated by the plaintiff in the matter. They referenced the New Delhi litigation. They construct the ruling of the New Delhi litigation. They set out the bounds of what the New Delhi court has said can be done, and what can be done more importantly, they address the territoriality. So as a just, some of this seems to be about abusive discretion. And one thing that puzzled me about the district court is it seems to have remanded very quickly. Like you removed and it remanded the same day or the next day without even getting further briefing on the issue. If it did that, doesn't that make it seem like it was very obvious? I mean, it said it seems to have acted as if this was a very obvious issue, but then on the attorney's fees issue thought it acted like it wasn't a very obvious issue. Your Honor, we act prudently, and I think there is an effort to recast something that's innocuous as nefarious, the fact that we sent an email to the state court advising of the intention to remove. That was done as a point of courtesy. We didn't know how quickly the state court was going to rule on a submitted paper. That's not what I'm asking. I'm asking if it's a federal court. So as I understand it, you removed to federal court and the federal court immediately remanded back to state court, like within 24 hours or something, without even getting a full set of briefing on whether it should remand. Your Honor, I don't have direct insight into the judge's workload or their inclinations for fast action. I really can't speak to that. But I would like to address an argument on bad faith that I think was not an accurate submission of the issue. I'm looking at the court order on the attorney's fee issue, and I'm quoting here, defense arguments ultimately lack merit under the well-pleaded complaint rule, but that does not entail they were patently, objectively unreasonable. And the previous sentence states that the plaintiff argues that the removal was brought in bad faith. In other words, it's not that the court is setting a higher threshold. Rather, what the court is doing is referencing the plaintiff's argument that this was done in bad faith. The federal court applied the appropriate standard and stated that the removal was not objectively unreasonable, and that's what's required. And under Martin, again, this is a quote, we have it on good authority that a motion to acquire discretion is a motion not to its inclination but to its judgment, and the judgment is to be guided by sound legal principles. We have that. The federal court, in ruling on the motion for attorney's fees, accurately stated the standard, accurately cited the cases. There's no legal error, and it evaluated every single argument submitted by the plaintiff. And so there's no abuse of discretion, and that's the standard to which it should be held on a review of the denial of a motion for attorney's fees. We don't have to decide whether your claim should have stayed in federal court, correct? You do not. Nothing further. Let's put two minutes on the clock, please. Just a few things, Your Honor. First, Placer Dome was cited on page four of our reply brief, so I didn't screw that one up. Go ahead. The question about the elements of a contract claim where there's a binding contract that's breached and damages, none of those require, imply, or anything involving foreign law. And to the extent that they come up, again, these are anticipated defenses. We've covered this. I think to clarify kind of the timing of this in terms of the unusual circumstances, we had a hearing on the TRO in the state court, and before we thought we had the order entered in state court, they removed it. So they got a free shot at hearing the TRO arguments, and I assume if they won the arguments, the TRO, and the TRO was denied, we would still probably be in state court, and this wouldn't be an issue, but they tried to circumvent it and try to get around it. But for the quick work of the state court, our client would have been dead in the water over the weekend. This was a Friday afternoon. It was over a three-day weekend. I can't imagine that we've gotten any relief from the federal court any faster to get the lights back on the case. There's already a finding by the state court of irreparable harm. So these are unusual circumstances of a party trying to get around what was a lawfully issued TRO order. Let me ask a question that may come a little bit out of left field. Would you seek to recover the fees expended in the federal proceeding once you successfully conclude the contract claim in state court? I guess under what— We have very liberal rules in Arizona. I practiced for 30 years there about actions under contract, and the impulse of state courts, at least when I practiced, was that if you prevailed on a contract, you recover all your fees. There certainly is a question about the intersection of there's a statute that provides it and denied it versus there's a big conflicting statute between state and federal court about that. That is still a long way removed, and we have a statute here that provides for it. I think there's a question, again, back to the fundamental need of deterrence that Martin recognized, that we can't be in a situation where plaintiffs, where we need quick relief, are damned if you do and damned if you don't. If we had filed in the federal court, I'm sure the question would have been, or we should have been in the first place. I'm not questioning the timing at all. Just have you considered whether at the successful, from your point of view, conclusion of the state court proceedings, whether you could file a request for attorney's fees for everything your client had to expend, including the efforts in federal court? No, I have not considered. That is still so far removed in our proceedings in the state court action. The second is it does require success in the state court action. There certainly is an outcome where we are not successful or there is a discretion where those fees are not awarded in the state court. I think there's a question of choice of law still about whether or not Arizona fees would apply or not. There's a whole bunch of other questions there. It's not even a guarantee that there may be a backstop, but the law does not necessarily require that kind of backstop to get to where we are today. I understand your response. Thank you. I found Placer Dome now that you pointed to where it was. Really, the reasoning there is all about how the claims did not embed this federal question. There were things in the complaint about international action, but none of them were part of the claim. I'm not sure that helps us. It gets us back to the same problem about whether your claims actually did embed some sort of notion of lack of court order or lack of reason that they broke this contract. Again, I think you're back to Placer Dome was decided for Gunn. Gunn is the standard that controls the federal question. When you apply, I do IP law. I would love to have IP contract cases in the federal court, but they don't meet the standard under Gunn. I think, as Your Honor was picking up, that even a situation that specifically addresses federal rights, that does not necessarily invoke federal question jurisdiction. We're still a step away from something that is already decided as not evoking federal question jurisdiction. Thank you, both sides, for the helpful arguments. This case is submitted, and we are adjourned. Thank you.
judges: HAWKINS, BYBEE, FRIEDLAND